64551. IN THE INTEREST OF H. L. T.

SOGNIER, Judge.

This is an appeal from an order of the Juvenile Court of DeKalb County terminating a father's parental rights to his daughter. The termination petition was brought by the child's maternal aunt and uncle with whom the child has been living for three years. Appellant father pled guilty to voluntary manslaughter in the death of his wife, the child's mother. Appellant was sentenced to twelve years imprisonment and is eligible for parole in December, 1982.

Appellant contends that the trial court erred in terminating his parental rights because the evidence did not support the trial court's finding and conclusion that the child was deprived and that the deprivation was likely to continue.

This court has stated on numerous occasions that termination of parental rights is a severe and drastic measure. *Harper v. DHR,* 159 Ga. App. 758, 760 (285 SE2d 220) (1981); *Painter v. Barkley,* 157 Ga. App. 69, 70 (276 SE2d 850) (1981); *Wynn v. DHR,* 149 Ga. App. 559, 561 (254 SE2d 883) (1979); *Childers v. Clayton County Dept. of Family &c. Serv.,* 147 Ga. App. 825, 826 (250 SE2d 564) (1978); *In the Interest of A. A. G.,* 146 Ga. App. 534 (246 SE2d 739) (1978). "Few forms of state action are both so severe and so irreversible." Santosky

v. Kramer, 455 U. S. 745 (102 SC 1388 71 LE2d 599) (1982).

"This court by order may terminate the parental rights of a parent with respect to his child if: . . . (2) The child is a deprived child and the court finds that the conditions and causes of the deprivation are likely to continue or will not be remedied and that by reason thereof the child is suffering or will probably suffer serious physical, mental, moral, or emotional harm; . . ." Code Ann. § 24A-3201(a)(2) (now OCGA § 15-11-51 (a) (2)). A deprived child "is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals; . . ." Code Ann. § 24A-401 (h) (1) (now OCGA § 15-11-2 (8) (A)).

This court has made it abundantly clear that a parent's rights to his or her child will not be terminated " 'without some required showing of parental, unfitness, caused either by intentional or unintentional misconduct resulting in abuse or neglect of the child, or by what is tantamount to physical or mental incapability to care for the child.' " *Chancey v. DHR,* 156 Ga. App. 338, 340 (274 SE2d 728) (1980); *Ray v. DHR,* 155 Ga. App. 81 (2) (270 SE2d 303) (1980); *Harper v. DHR,* 159 Ga. App. 758, 759 (285 SE2d 220) (1981). "This court's decisions 'have taken a stern view in cases of parental termination, sustaining such rendering only where there is evidence of profoundly detrimental and egregious parental *misconduct* underlying the deprivation and probable continued deprivation.' *Shover v. DHR,* 155 Ga. App. 38, 40 (270 SE2d 462) (1981)." *McCormick v. DHR,* 161 Ga. App. 163, 164 (288 SE2d 120) (1982).

With the substantive standard in mind, this court recently reviewed two cases wherein a termination of parental rights proceeding was brought against a father who had killed his child's mother. In *Painter v. Barkley,* supra, this court affirmed the trial court's order refusing to terminate the parental rights of a father who was convicted of murder in the death of the child's mother. In *Painter,* we said that a parent does not automatically forfeit his parental rights by his actions and disagreed with *George v. Anderson,* 135 Ga. App. 273 (217 SE2d 609) (1975) in this regard.

In *Brown v. DHR,* 157 Ga. App. 106 (276 SE2d 155) (1981), Chief Judge Quillian affirmed the termination of parental rights of a father who was convicted of voluntary manslaughter in the death of the children's mother. However, the evidence in *Brown* supporting termination was that the father had killed the mother when the children (twins) were three months old and that the children were placed in foster homes in the custody of DFACS. The father had minimal personal contacts with the children; he did not communicate with DFACS about them or send them gifts or in any way provide for

their support although he was financially able to do so. Up to the time of the mother's death the twins lived with their mother (it was not clear whether she and the father were married) and her other children in unclean homes in conditions of extreme poverty with the mother receiving welfare although appellant was steadily employed at Lockheed. The twins were developmentally retarded children in need of special education and care. Appellant was 56 years old, in prison with an expectation of parole, unemployed with a possibility of returning to his former job, and no indication that he could care for the children's special needs. *Brown v. DHR,* supra at p. 107.

Similarly in *Sturkie v. Skinner,* 214 Ga. 264, 270 (104 SE2d 417) (1958), the Supreme Court held that the trial court was authorized "from all of the facts and circumstances" of the case to find a father who was alleged to have killed the mother of his child unfit to have custody and control of the child. *Sturkie,* however, did not involve *termination* of parental rights, nor did it hold that the evidence that the father had killed the child's mother authorized a *forfeiture* of his parental rights.

The trial court in the instant case concluded that "the mere fact that when one parent kills another does not in and of itself cause the forfeiture of the killer's parental rights as a matter of law, . . . . The trial courts of this state should weigh all the evidence presented and decide the cases or (sic) the totality of the evidence. . . ." We agree with the trial court's conclusion. However, the trial court failed to apply the correct evidentiary standard in terminating appellant's parental rights and for this reason we must reverse.

Compelling facts are required to terminate parental rights. *Hooks v. Baldwin County &c. Services,* 162 Ga. App. 142, 144 (290 SE2d 356) (1982); *In the Interest of T. R. L.,* 162 Ga. App. 659, 661 (292 SE2d 518) (1982). The Supreme Court of the United States has recently articulated an evidentiary standard to be applied in cases involving termination of parental rights. Santosky v. Kramer, supra. The Supreme Court held that a " 'clear and convincing evidence' " standard of proof would be required in cases wherein parental rights were terminated. Id. at 617. In requiring such a standard Justice Blackmun stated: "an elevated standard of proof in a parental rights termination proceeding would alleviate 'the possible risk that a factfinder might decide to (deprive) an individual based solely on a few isolated instances of unusual conduct (or) . . . idiosyncratic behavior.' [Cit.]" Id. at 614.

Our Supreme Court has stated: "The 'any evidence' standard or the 'preponderance of the evidence' standard is inadequate in dealing with a finding of the deprivation of a child or termination of parental

rights." *In re Suggs,* 249 Ga. 365 (291 SE2d 233) (1982), and pointed out that the "clear and convincing evidence" standard is stated in our statute. See Code Ann. § 24A-2201 (now OCGA § 15-11-33 (b)).

In *Blackburn v. Blackburn,* 249 Ga. 689 (292 SE2d 821) (1982), our Supreme Court in reversing a trial court's decision to deny *custody* to a natural parent said:

"We hold that the appropriate standard of appellate review in a case where a parent's rights to his child have been severed is 'whether after reviewing the evidence in the light most favorable to the appellee, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost.' " Id. at 694. "A finding of unfitness must center on the parent alone, that is, can the parent provide for the child sufficiently so that the government is not forced to step in and separate the child from the parent. A court is not allowed to terminate a parent's natural right because it has determined that the child might have better financial, educational or *even moral advantages* elsewhere. . . . Only under compelling circumstances found to exist by clear and convincing proof may a court sever the parent-child custodial relationship." (Emphasis supplied.) *Carvalho v. Lewis,* 247 Ga. 94, 95 (274 SE2d 471) (1981). Evidence of *past* unfitness, standing alone, is not enough; clear and convincing evidence of *present* unfitness is required. *Blackburn,* supra, at 692.

In the instant case, the trial court found that the child was deprived because of the death of her mother at the hands of her father. The only other evidence in support of termination was that appellant had used foul language in disciplining his stepson and that appellant during an argument with his wife had broken the windshield on her car. There is no evidence that appellant had ever abused, injured or failed to provide for his child. Rather the evidence discloses that he is a devoted father; that he has attempted to maintain contact with the child while in prison; and that he is a model inmate eligible for parole in December 1982. The evidence also disclosed that he has a job and a home waiting for him on his release from prison. The guardian ad litem appointed by the court to represent the child's interest did not recommend termination of appellant's parental rights, but rather that *temporary* custody remain with appellees.

Applying the correct substantive and evidentiary standards to the facts of this case, we must conclude that the trial court erred in terminating appellant's parental rights. We do not find upon appellate review that appellees carried their burden of proof with clear and convincing evidence that would support a finding of parental unfitness sufficient to terminate appellant's parental rights.

*Judgment reversed. Deen, P. J., and Pope, J., concur.*

DECIDED NOVEMBER 23, 1982.

*Patrick T. Beall,* for appellant.
*Andrew J. Hinton,* for appellee.