A92A2102. IN THE INTEREST OF A. M. S., a child.
(430 SE2d 626)

BLACKBURN, Judge.

The appellees, Reedy Buford Owen and Frances Marie Owen, the maternal grandparents of A. M. S., a minor child, petitioned the Juvenile Court of DeKalb County for an order terminating the parental rights of the child's biological father, Robert Strickland, Jr. After a hearing, the trial court terminated Strickland's parental rights based upon Strickland's murder of the child's mother as well as other evidence which indicated that the child was deprived, and such deprivation was likely to continue, resulting in harm to the child. This appeal followed.

At the termination hearing, the Owens presented undisputed evidence that Strickland was tried before a jury in the Superior Court of DeKalb County and convicted of murdering the child's mother. Strickland is currently serving a life sentence for the murder and the minor child has been in the custody of her maternal grandparents

since her mother's death. The child was two years of age at the time of her mother's murder. The juvenile court took judicial notice of appeals to the Georgia Supreme Court relating to Strickland's murder conviction and adopted facts published in *Strickland v. State*, 257 Ga. 230 (357 SE2d 85) (1987) and *Strickland v. State*, 260 Ga. 28 (389 SE2d 230) (1990) in determining whether Strickland's parental rights should be terminated. As delineated in *Strickland*, in addition to the murder of his estranged wife, the child's mother, Strickland broke into his wife's home and shot her companion approximately four days before he murdered her, which fact was also considered by the court below.

The evidence produced at trial further revealed that Strickland's contact with A. M. S. has been limited. He has never attempted to call the child during the seven years that he has been incarcerated, and visitation with the child has consisted of ten to fifteen minute visits before the extension of custody hearings. The child was last seen by Strickland in 1990. Strickland has never asked the Owens if they needed anything for the child and on only one occasion has Strickland sent the child any monetary support. Strickland does not have any definite employment prospects upon his parole from prison and moreover, the guardian ad litem recommended the termination of Strickland's parental rights because there has been a demonstrative negative effect on the parent-child relationship.

1. Strickland contends the juvenile court erred in denying his motion to dismiss, arguing the termination petition fails to comply with OCGA § 15-11-82 (c) in not clearly stating the effects of an order terminating parental rights as stated in OCGA § 15-11-80. Specifically, Strickland argues the petition fails to state that an order terminating parental rights is without limit as to duration and that a parent whose rights are terminated is not entitled to notice of proceedings for the adoption of the child. See OCGA § 15-11-80. This contention is not supported by the record.

The termination petition alleges that "[t]he child would be unable to have a meaningful future relationship with [the father] if they were ever re-united [and prays that the] father's rights and obligations with respect to the child and all of the rights and obligations of the child to the father, arising out of the parental relationship, including right of inheritance, be *TERMINATED* so that thereafter the father shall not be entitled to notice of adoption of the child by another person nor shall the father have any right to object to the adoption nor otherwise participate in the proceedings[.]" These terms sufficiently apprise Strickland of the consequences of an order terminating parental rights as required by OCGA § 15-11-82 (c). Compare *In the Interest of D. R. C.*, 191 Ga. App. 278 (1) (381 SE2d 426) (1989), where the termination petition failed to provide notice

that a parent whose rights are terminated as to a child is not entitled to notice of proceedings for the child's adoption.

2. Strickland contends the juvenile court erred in taking judicial notice of *Strickland v. State*, 257 Ga. 230, supra, and *Strickland v. State*, 260 Ga. 28, supra, and in relying on facts stated in these opinions to determine whether his parental rights should be terminated.

Strickland did not object when the juvenile court announced judicial cognizance of adjudicative facts set out in *Strickland v. State*, 257 Ga. 230, supra, and *Strickland v. State*, 260 Ga. 28, supra. Consequently, he may not complain of the juvenile court's reliance on facts set out in those opinions. *Redwine v. Frizzell*, 186 Ga. 296 (2) (197 SE 805) (1938).

Strickland also asserts that the trial court erred in failing to allow him to rebut the adjudicative facts delineated in *Strickland v. State*, 257 Ga. 230, supra, and *Strickland v. State*, 260 Ga. 28, supra, by making a proffer of testimony as to his "state of mind" at the time of the murder. However, Strickland's state of mind has been previously determined by his conviction of murder, an offense requiring malice aforethought, and any evidence as to his state of mind or other circumstances surrounding the murder not delineated in the decision would be cumulative. Further, the appellant has not shown that the oral testimony that he proposes to submit is material, relevant and beneficial to a proceeding to terminate parental rights. "[I]t is a well settled rule that in order to preserve a ground of objection relating to the exclusion of oral testimony it is necessary for the complaining party to show what he expects to prove and that the evidence is material, relevant and beneficial [cit.]. . . ." *Hendrix v. Byers Bldg. Supply*, 167 Ga. App. 878, 880 (2) (307 SE2d 759) (1983). In addition, the appellant has not shown that any error committed by the juvenile court in failing to consider evidence on his state of mind was harmful, warranting a reversal. Consequently, we find that this enumeration is without merit.

3. Strickland contends that the trial court erred in holding that an automatic forfeiture of parental rights occurs when one spouse is convicted of murdering the other spouse. He further contends that the decision of the trial court is not supported by clear and convincing evidence, not supported by the record and is based upon facts contradicted by the record. We disagree.

This court has recognized in *In the Interest of H. L. T.*, 164 Ga. App. 517, 519 (298 SE2d 33) (1982), that the mere fact that a parent kills another parent does not in and of itself result in the automatic forfeiture of the parent's parental rights to the child as a matter of law. However, this court has held in *Heath v. McGuire*, 167 Ga. App. 489, 492 (3) (306 SE2d 741) (1983), in support of the trial court's termination of parental rights of a father who was convicted of the mur-

der of the child's mother, that "[t]he requisite malice necessarily shown by guilt of the murder of one's spouse is sufficient to imply a moral unfitness to terminate the parental relationship, an unfitness which is likely to continue with resultant harm to the innocent child." The *Heath* court distinguished *H. L. T.*, supra at 492, in that the father in *H. L. T.* was guilty of voluntary manslaughter, a crime in which the law recognizes mitigating circumstances surrounding the homicide. We are cognizant that the killing of another spouse in and of itself does not result in an automatic forfeiture of parental rights. Nevertheless, a conviction of *murder*, as in the case sub judice, can infer the requisite moral unfitness to support termination of parental rights.

In the instant case, the juvenile court considered Strickland's murder of the mother of the child while on bond for aggravated assault based on his having shot a friend of the mother, along with other evidence of parental unfitness, in deciding that this child was deprived and the deprivation would likely continue, resulting in harm to the child, as provided in OCGA § 15-11-81. In addition to Strickland's murder of his spouse and aggravated assault of the companion, the trial court considered Strickland's limited communication with and support of the child. The court also considered the recommendation of the guardian ad litem and Strickland's lack of definite employment prospects upon parole.

" '(T)he appropriate standard of appellate review in a case of this sort is whether after reviewing the evidence in the light most favorable to the appellee, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody were lost. . . . The factfinding and weighing of evidence is to be done in the trial court under the clear and convincing evidence test. The reviewing court is to defer to the lower court in the area of factfinding and should affirm unless the appellate standard of review, here the rational factfinder test . . . , is not met. . . .' [Cits.]" *In the Interest of J. L. G.*, 191 Ga. App. 904, 905 (1) (383 SE2d 376) (1989).

Considering the evidence in the light most favorable to the appellees, we conclude that the trial court's termination of Strickland's parental rights based upon the deprivation of the child was based upon the clear and convincing standard and is supported by the evidence.

4. Lastly, Strickland contends that the juvenile court erred in terminating his parental rights when the evidence showed that a continuation of custody order would have adequately protected the interest of A. M. S. Strickland cites as controlling authority this court's decision in *Jones v. Dept. of Human Resources*, 168 Ga. App. 915 (310 SE2d 753) (1983). However, *Jones* is distinguishable from the case sub judice. The *Jones* court remanded the case based upon evidence presented at trial which showed that the termination of the parental

rights of the biological parents was inconsistent with the declared intentions of the department "to place the child with an uncle and aunt for adoption, thereby allowing [the child] to remain in contact with his parents while enjoying a stable home life." Id. at 915. Further the department could not articulate a reason as to why a mere transfer of custody would not be appropriate considering the expressed objectives of the department. Id. at 916.

In the case sub judice, the evidence shows that the termination of Strickland's parental rights is in the best interest of the child, as found by the juvenile court, considering the physical, mental, emotional, and moral condition and needs of the child, including the need for a secure and stable home. " 'In determining how the interest of the child is best served, the juvenile court is vested with a broad discretion which will not be controlled in the absence of manifest abuse. [Cit.]' " *Banks v. Dept. of Human Resources*, 141 Ga. App. 347, 350 (2) (233 SE2d 449) (1977). Accordingly, we find that the juvenile court did not abuse its discretion in concluding that the termination of Strickland's parental rights is in the best interest of A. M. S.

*Judgment affirmed. Pope, C. J., Birdsong, P. J., Carley, P. J., Beasley, Andrews and Johnson, JJ., concur. McMurray, P. J., and Cooper, J., dissent.*

McMURRAY, Presiding Judge, dissenting.

I respectfully dissent as it is my view that the trial court erred in failing to allow Strickland to proffer evidence which may be relevant in defense to the petition for termination of his parental rights.

Strickland complained when the juvenile court cut off testimony relating to circumstances of the murder apparently not reported in *Strickland v. State*, 257 Ga. 230 (357 SE2d 85), and *Strickland v. State*, 260 Ga. 28 (389 SE2d 230). Specifically, the juvenile court interrupted Strickland's testimony and the following transpired: "*JUDGE WHEELER:* Excuse me, Ms. Pace, are we getting close to the murder date now? *MS. PACE:* Yes, your Honor, we are. *JUDGE WHEELER:* And we are not going to try the murder case again in this Court. That's been tried twice in superior court; it's been appealed twice in Supreme Court. Court will take judicial notice of those decisions and what it said in there including the entire file before this Court. I'm not going to try that murder case in this Court. It's on termination of parental rights. *MS. PACE:* Your Honor, the allegations in the petition for [termination of] parental rights speak to the moral unfitness and I think it does, this is a civil case. Those were criminal cases and while it may be res adjudicata as to the criminal case, I don't believe that the facts and circumstances of that case are excluded from this court. *JUDGE WHEELER:* Not only would I not allow it to be tried again, but degree of proof in a murder case,

criminal case, is beyond a reasonable doubt, it's clear and convincing in this Court. Now, I'm not going to try that murder case again in this case, it's that simple. *MS. PACE:* . . . Your Honor, the evidence . . . we are trying to elicit here, would relate to the state of mind at the time of the murder. *JUDGE WHEELER:* That was determined by the jury in the superior court. *MS. PACE:* And I would make a continuing offer of this evidence. *JUDGE WHEELER:* All right, it is well noted."

"While it is a well settled rule that in order to preserve a ground of objection relating to the exclusion of oral testimony it is necessary for the complaining party to show what he expects to prove and that the evidence is material, relevant and beneficial (*Griffin v. Henderson*, 117 Ga. 382 (2) (43 SE 712)), it is equally true that where an offer of proof is necessary it is error for the trial judge to deny counsel an opportunity to state what he proposes to prove by the evidence offered. *Stephen W. Brown &c. Assoc. v. Gowers*, 157 Ga. App. 770, 781 (6) (278 SE2d 653)." *Hendrix v. Byers Bldg. Supply*, 167 Ga. App. 878, 880 (2) (307 SE2d 759).

In the case sub judice, Strickland's attorney stated that she was "trying to elicit [testimony relevant] to [Strickland's] state of mind at the time of the murder." However, the juvenile court did not allow her to make proffer of the specific testimony she intended to illicit. In view of this court's holding in *In the Interest of J. L. M.*, 204 Ga. App. 46 (1), 47 (418 SE2d 415), this constituted error as such testimony may be relevant to the issue of termination of Strickland's parental rights. "[T]he murder of one parent by another does not automatically result in a forfeiture of the latter parent's parental rights, [*In the Interest of H. L. T.*, 164 Ga. App. 517, 518 (298 SE2d 33)], but instead must be considered together with other evidence of parental unfitness. See id. at 518-520." *In the Interest of J. L. M.*, 204 Ga. App. 46 (1), 47, supra.

"In considering a petition for termination of parental rights, the court first must determine whether there exists clear and convincing evidence of parental misconduct or inability. OCGA § 15-11-81 (a). Such misconduct or inability may be found if, inter alia, the child is found to be a deprived child as defined in OCGA § 15-11-2; this deprivation results from a lack of proper parental care or control; the lack of care or control is likely to continue or will not likely be remedied; and this continued deprivation will or is likely to cause serious physical, mental, emotional, or moral harm to the child. OCGA § 15-11-81 (b) (4) (A). A finding of unfitness must center on the parent alone, and must be based on clear and convincing evidence of present unfitness, not merely upon evidence of past unfitness. *In the Interest of H. L. T.*, 164 Ga. App. 517, 520 (298 SE2d 33) (1982). Termination of parental rights is a severe measure authorized only under compelling

circumstances when demonstrated by clear and convincing evidence. *Heath v. McGuire*, 167 Ga. App. 489, 491 (306 SE2d 741) (1983)." *In the Interest of J. L. M.*, 204 Ga. App. 46 (1), 47, supra.

Consequently, the case sub judice should be remanded for further consideration of any evidence relating to parental fitness, including circumstances of the crime which form the central basis of the petition for termination of Strickland's parental rights. See *In the Interest of J. L. M.*, 204 Ga. App. 46 (1), supra, where the father's conduct in murdering the child's mother was relevant in determining whether the father's parental rights should be terminated.

I am authorized to state that Judge Cooper joins in this dissent.

DECIDED MARCH 16, 1993 —
RECONSIDERATION DENIED APRIL 1, 1993 ▮▮▮▮▮▮▮▮▮▮

*Linda A. Pace*, for appellant.

*Michael J. Bowers, Attorney General, Margot M. Cairnes, Staff Attorney, Nardone & Read, Robert G. Nardone, Dorothy V. Murphy*, for appellees.