556 S.E.2d 234 (2001)
252 Ga. App. 335
In the Interest of Z.B., a child.
No. A01A1213.
Court of Appeals of Georgia.
November 7, 2001.
*235 Kenneth R. Ellis, for appellant.
Thurbert E. Baker, Atty. Gen., Jeffrey L. Milsteen, Dennis R. Dunn, Deputy Attys. Gen., William C. Joy, Senior Asst. Atty. Gen., Shalen S. Nelson, Laura W. Hyman, Asst. Attys. Gen., P. Brian Campbell, for appellee.
MIKELL, Judge.
The mother of Z.B. appeals from a juvenile court order terminating her parental rights. While we affirm the termination, we vacate the order to the extent that it places permanent custody of the child with the Georgia Department of Human Resources, and remand the case with direction that the juvenile *236 court evaluate the possibility of placing the child with a suitable relative.
On appeal from the grant of a termination petition, this Court must determine whether a rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. In the Interest of J.R., 202 Ga. App. 418, 414 S.E.2d 540 (1992). We construe the evidence most strongly to support the juvenile court's judgment, "and every presumption and inference must be in favor thereof. The reviewing court is to defer to the lower court in the area of factfinding and should affirm unless the appellate standard of review is not met." (Citations and punctuation omitted.) Id.
Termination of parental rights requires a clear and convincing showing that the child is deprived due to parental misconduct or inability which is likely to continue or is not likely to be remedied, thereby causing serious physical, mental, emotional, or moral harm to the child. Lack of proper parental control may be shown by evidence of the parent's past physical, mental, or emotional neglect of the child or of another child.

(Citation and punctuation omitted; emphasis supplied.) In the Interest of A.D., 243 Ga. App. 727, 729, 534 S.E.2d 457 (2000); OCGA § 15-11-94(b)(4)(B)(v).
1. As a deprived child is defined as one who lacks proper parental care or control, OCGA § 15-11-2(8)(A), the juvenile court properly focused on evidence of appellant's "past physical, mental, or emotional neglect" of her other children in terminating her parental rights. OCGA § 15-11-94(b)(4)(B)(v); see also In the Interest of M.L.P., 236 Ga.App. 504, 506, 512 S.E.2d 652 (1999).
Z.B., who was born on September 23, 1999, is appellant's eighth child. Appellant's other children were born in 1984, 1989, 1990, 1992, 1994, 1995, and 1997, and none of the children remain in her custody. Appellant gave up her first child for adoption, and her parental rights to her remaining six children were terminated in North Carolina three months before Z.B. was born. Appellant had moved from Georgia to North Carolina with the children in May 1997, despite years of ongoing assistance provided by the Fulton County Department of Family & Children Services (the "Department").
Although the Davidson County, North Carolina Department of Social Services ("DSS") provided intensive in-home services to appellant and the children, appellant was unable to cope. DSS removed the children from appellant's custody on July 17, 1997. A North Carolina court entered an order on October 13, 1997, adjudicating the children abused and neglected. The order recounted the following: expert testimony that two of the children had anal injuries consistent with trauma; evidence that the children acted out sexually; statements of witnesses, including relatives and domestic violence personnel, who observed appellant hit the children in the head and threaten to kill them; and statements of caseworkers who observed appellant feeding the children by placing cold macaroni on the table and permitting them to fight over the food and by giving them unopened cans of Vienna sausages, which even the 19-month-old child had to open by himself. Moreover, the five-month-old was left alone in the home, and the other children were permitted to roam the neighborhood. In addition, the order cited evidence of extremely unsanitary conditions in the home. The three-year-old was permitted to urinate on the floor; diapers filled with feces were found on the floor; and the children were observed walking through the filth.
Twanna Robinson, a DSS caseworker, testified during the instant termination hearing that appellant began supervised visitation with the children in September 1997; that the children behaved so aggressively during these visits that two or three social workers were required to manage them, while appellant sat idly by; that the children remained aggressive for a week after each visit; and that appellant brought various male friends with her, even once asking the children to sit on a man's lap. Appellant denied that DSS provided her with any assistance and denied bringing strange men to the supervised visits. In addition, appellant admitted that *237 from 1993 through 1997, she lied about the identity of the children's father.
Robinson testified that visitation ceased in January 1998, when appellant left North Carolina. She returned for a review hearing in July 1998, and the judge informed her that she would not be allowed to see the children unless she started complying with her case plan. Appellant, however, returned to Atlanta. After a hearing, which appellant did not attend, the North Carolina court terminated appellant's parental rights to the six children.
The North Carolina orders, coupled with Robinson's testimony, provide evidence of appellant's past physical, mental, and emotional neglect of her six other children. OCGA § 15-11-94(b)(4)(B)(v). Clear and convincing evidence supports the juvenile court's determination that Z.B. is deprived due to lack of proper parental care or control.
Appellant contends that the Department failed to show by clear and convincing evidence that appellant is presently unfit to parent a single child. She further argues that the juvenile court improperly shifted the burden of proof to her on this issue. Appellant points to testimony from caseworkers showing that her current home, in the absence of children, is adequate, that she attends all scheduled visits with Z.B., that she participates in parenting classes, and that she has substantially met each goal in her case plan with the exception of providing financial support for Z.B. Appellant correctly asserts that "[e]vidence of past unfitness, standing alone, is insufficient to terminate the rights of a parent in her natural child; clear and convincing evidence of present unfitness is required." (Citations and punctuation omitted.) In the Interest of R. A., 226 Ga.App. 18, 20, 486 S.E.2d 363 (1997). However, in determining present unfitness, the juvenile court was permitted to consider whether appellant had successfully demonstrated her ability to care for her other children. In the Interest of S.L.B., 214 Ga.App. 802, 804, 449 S.E.2d 334 (1994). "While the mother's efforts to improve herself are good, the trial court must determine whether a parent's conduct warrants hope of rehabilitation, not an appellate court." (Citation and punctuation omitted.) In the Interest of M.L.P., supra at 509(1)(c), 512 S.E.2d 652. The juvenile court was not required to unite Z.B. with appellant in order to obtain current evidence of deprivation or neglect. In the Interest of E.C., 225 Ga.App. 12, 16, 482 S.E.2d 522 (1997).
Moreover, other evidence supported the juvenile court's finding that appellant lacks the parenting skills necessary to raise Z.B. A caseworker testified that appellant was "very slow" mentally and could not manage children on her own. Appellant was the beneficiary of constant, intensive family support services from 1993 to 1997. Caseworkers testified appellant required continual assistance with bathing, feeding, and obtaining medical care for the children and that the Department could not provide those services indefinitely. Z.B.'s father, with whom appellant currently resides, threatened to kill a social worker while the family previously resided in Georgia. The juvenile court terminated the parental rights of Z.B.'s father, but he has not appealed. In addition, appellant is unemployed and has no significant work history.
Appellant contends that the testimony of Gary Santavicca, a psychologist who evaluated appellant prior to the hearing, fails to support the trial court's finding of present parental unfitness by clear and convincing evidence. Santavicca testified that appellant was suffering from clinical depression and had borderline, or very low level, intellectual functioning. Without reviewing the North Carolina adjudication order, he found no evidence to suggest that appellant would be unable to maintain an appropriate relationship with Z.B. However, after being advised of the order, Santavicca recommended that the child not be returned to appellant's custody, at least pending further assessment and psychological counseling.
We do not agree with appellant's contention that Santavicca's testimony requires reversal of the termination order. As stated earlier, the juvenile court was entitled to consider appellant's past physical, mental, and emotional neglect of her six other children in determining her present ability to parent Z.B. In addition, "conflicts in the evidence *238 ... do not necessarily preclude satisfaction of the appellate standard of review." In the Interest of S.L.B., supra at 804, 449 S.E.2d 334. "[A]n appellate court's role is to determine if there is sufficient evidence to authorize the trial court's judgment; it is not to give a de novo opinion as to the weight of the evidence." In the Interest of J.E.E., 228 Ga.App. 831, 835(2), 493 S.E.2d 34 (1997).
In summary, we find that clear and convincing evidence supports the juvenile court's finding that Z.B. is deprived, as that term is defined in OCGA § 15-11-2(8); that lack of proper parental care or control is causing the deprivation; that the cause of deprivation is likely to continue; and that the deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child. OCGA § 15-11-94(b)(4)(A). Moreover, the court properly considered evidence of appellant's abuse and neglect of her other children in determining parental misconduct or inability. OCGA § 15-11-94(b)(4)(B)(v).
2. Further, we hold that the court properly concluded that termination of appellant's parental rights was in Z.B.'s best interest, considering the child's physical, mental, emotional, and moral condition and needs, including her need for a secure and stable home. In the Interest of J.S., 232 Ga.App. 876(1), 502 S.E.2d 788 (1998). "The primary consideration in a proceeding to terminate parental rights is the welfare of the child. In determining how the interest of the child is best served, the juvenile court is vested with a broad discretion which will not be controlled in the absence of manifest abuse." (Punctuation omitted.) In the Interest of R.A., supra. There was no abuse of discretion. Clear and convincing evidence supports the court's findings.
3. Finally, the Department concedes that the juvenile court erred when it did not require a search for a suitable relative with whom to place the child, as mandated by OCGA § 15-11-103(a)(1). "[A]ccording to the clear dictates of the statute, it is incumbent upon the court and the department to conduct a thorough search for a suitable family member. The record does not show that such a search was ever conducted." In the Interest of J.J.W., 247 Ga. App. 804, 807-808(2), 545 S.E.2d 21 (2001). Accordingly, that portion of the order which places Z.B. permanently with the Department of Human Resources is vacated, and the case is remanded to the juvenile court with instructions that the court, in conjunction with the Department of Human Resources, evaluate the possibility of placing the child with a suitable family member or relative. Id.
Judgment affirmed in part and vacated in part and case remanded with direction.
BLACKBURN, C.J., and POPE, P.J., concur.